UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60285-ROSENBAUM/SNOW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TERRANCE BROWN, *et al.*,

        Defendants.
_____/

## ORDER

This matter is before the Court upon Defendant Hasam Williams's Motion to Sever [D.E. 526] and Defendant Joseph Simmons's Motion to Sever [D.E. 547]. The Court has carefully reviewed Defendants' Motions, all supporting and opposing filings, and the record. After careful consideration, the Court now denies Defendants' Motions for the reasons set forth below.

### *I. Background*

On October 1, 2010, a Brink's armored truck messenger was shot dead outside of a Bank of America branch located in Miramar when individuals attempted to rob him of approximately $395,000.00 that he was delivering. In connection with this event, Nathanial Moss was charged with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and using and carrying a firearm during the commission of a Hobbs Act robbery and causing the murder of a person in the course of that violation. *See United States v. Nathaniel Moss*, Case No. 10-60264-CR-COHN (S.D. Fla. Jan. 13, 2012), D.E. 9 (Indictment). Based on these charges, Moss was eligible for the death penalty. *See id.* at 3-4.

In exchange for the Government's agreement not to seek the death penalty, however, Moss pled guilty to the Indictment. *See* Case No. 10-60264, D.E. 145 at ¶¶ 1, 11. Ultimately, Moss was sentenced to life imprisonment. *See id.* at D.E. 150. As a part of his plea agreement and in effort to obtain a reduced sentence, Moss agreed to cooperate with the Government in its investigation of the October 1, 2010, robbery. *See id.* at D.E. 145, ¶¶ 8-10. Through Moss, the Government learned of other allegedly successful and unsuccessful armored car robbery attempts in which Moss, Defendant Brown, and other Defendants allegedly participated over a number of years. To varying degrees, the Government obtained evidence tending to corroborate some of these prior robbery attempts and charged Defendants with the attempts that occurred between May 2010 and October 1, 2010.

In part as a result of Moss's cooperation, the grand jury returned charges against Defendants Terrance Brown, Toriano Johnson, Daryl Davis, Hasam Williams, Joseph K. Simmons, and Bobby Ricky Madison, relating to the October 1, 2010, armored-car robbery and some of the other alleged attempted armored-car robberies about which Moss told the Government during his debriefing sessions. Defendant Madison's trial proceeded separately from the other Defendants.[1]

During Madison's trial, the Government called Moss to testify. During his testimony, Moss implicated Defendants Brown, Johnson, Davis, Williams, and Madison by name, and Defendant Simmons by description. He further explained how he knew the various Defendants, stating that he knew Defendant Johnson from the neighborhood, where Moss was a lieutenant in Johnson's drug-

---

[1]Defendant Madison allegedly was not involved in the October 1, 2010, robbery that resulting in the death of the Brink's messenger. As a result, he was not death-penalty eligible like the other Defendants in this case. A few months after the conclusion of Madison's trial, the Government announced that it would not seek the death penalty for the other Defendants in this case. Their trial is currently set to begin on May 20, 2013.

trafficking organization. According to Moss's testimony, Johnson and two others owned and ran a barbershop in Opa Locka out of which the drug-trafficking organization operated. Moss further asserted that he met Brown through Johnson and the barbershop and that he met Davis and Williams at about the same time that he met Brown.

Then Moss testified about other armored-car robberies and attempts. Among the robberies and attempts, Moss stated that he, Brown, Williams, and Davis, along with others, had committed an armored-car robbery in 2005. In explaining why the 2010 robbery crew was formulated as it allegedly was, Moss stated that it was based on the successful 2005 robbery. Later in his testimony, Moss said that Simmons was brought in by Williams to replace Williams in the October robbery after Williams had been arrested in July 2010. In addition, the Government has announced its intention to rely upon evidence of Brown's involvement in robberies that occurred in 2001 and 2003, which are similar to those at issue.

In his pending motion, Defendant Williams complains that evidence of Brown's alleged involvement in the 2001 and 2003 robberies, and evidence of Johnson, Brown, and alleged co-conspirator Parrish's alleged involvement in a drug-trafficking organization are highly prejudicial to Williams since he had no alleged involvement in any of these activities. Similarly, Defendant Simmons objects to the use of evidence against the other Defendants concerning the earlier robberies, since he was not allegedly involved in the conspiracy until after the July 2010 failed attempt. Like Williams, Simmons argues that the admission of such evidence would be unduly prejudicial to him. Accordingly, both Williams and Simmons have moved to sever their trials from that of the remaining Defendants. The Government opposes Williams's and Simmons's Motions.

## II. Discussion

This Court cannot say it any better than the Eleventh Circuit:

> Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources. *Zafiro v. United States,* 506 U.S. 534, 537, . . . (1993); *Puiatti v. McNeil,* 626 F.3d 1283, 1309 (11th Cir. 2010); *United States v. Day,* 405 F.3d 1293, 1297 (11th Cir. 2005); *see also Richardson v. Marsh,* 481 U.S. 200, 210, . . . (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."). In this circuit, the rule about joint trials is that "defendants who are indicted together are usually tried together." *United States v. Browne,* 505 F.3d 1229, 1268 (11th Cir. 2007); *see also Puiatti,* 626 F.3d at 1309; *United States v. Chavez,* 584 F.3d 1354, 1360 (11th Cir. 2009); *United States v. Baker,* 432 F.3d 1189, 1236 (11th Cir. 2005); *United States v. Novaton,* 271 F.3d 968, 989 (11th Cir. 2001); *United States v. Schlei,* 122 F.3d 944, 984 (11th Cir. 1997); *United States v. Alvarez,* 755 F.2d 830, 857 (11th Cir. 1985); *United States v. Perez,* 489 F.2d 51, 65 (5th Cir. 1973). . . .
>
> That rule is even more pronounced in conspiracy cases where the refrain is that "defendants charged with a common conspiracy should be tried together." *United States v. Beale*, 921 F.2d 1412, 1428 (11th Cir. 1991); *see also Chavez*, 584 F.3d at 1360; *Baker*, 432 F.3d at 1236; *Schlei*, 122 F.3d at 984. . . .
>
> To be sure, the rule about a joint trial in conspiracy cases is not quite ironclad. *See* Fed. R. Crim. P. 14(a) ("If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . , the court may . . . sever the defendants' trials, or provide any other relief that justice requires."). The exceptional circumstances justifying a deviation from the rule, however, are few and far between. A defendant seeking a severance must carry the "heavy burden of demonstrating [that] compelling prejudice" would result from a joint trial. *Browne*, 505 F.3d at 1268 (quotation marks omitted). To show

compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice — jury instructions or some other remedy short of severance will not work. *Zafiro*, 506 U.S. 539-41, . . . ; *United States v. Blankenship*, 382 F.3d 1110, 1122-23 (11th Cir. 2004).

The potential for prejudice from a joint trial is not enough, and not just any kind of prejudice will do. For example, the Supreme Court explained in *Zafiro* that "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro,* 506 U.S. at 538, . . . ; *see also Blankenship,* 382 F.3d at 1122 (noting that *Zafiro* "specifically rejected the notion that defendants who have contradictory defenses are inherently prejudiced"). And "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro,* 506 U.S. at 540, . . . . Anything that increases the likelihood of a conviction "prejudices" the defendant in the ordinary sense of the word, but in severance law "prejudice" is not used in the ordinary sense of the word.

Because limiting instructions usually will cure any prejudice resulting from a joint trial, *Zafiro,* 506 U.S. at 539, . . . , the Supreme Court has indicated that severances need be granted only if there is a serious risk that a joint trial would either "compromise a specific trial right of one of the defendants" or "prevent the jury from making a reliable judgment about guilt or innocence" even if limiting instructions are given. *United States v. Thompson,* 422 F.3d 1285, 1292 (11th Cir. 2005) (quoting *Zafiro,* 506 U.S. at 539, . . . ); *Browne,* 505 F.3d at 1269; *Blankenship,* 382 F.3d at 1122. Aside from those two situations, jointly indicted defendants are not entitled to a severance. *See Blankenship,* 382 F.3d at 1123.

Examples of specific constitutionally protected trial rights that might be jeopardized in a joint trial are the Sixth Amendment right to confrontation and the Fifth Amendment right to remain silent. *Id.* at 1123 n. 24. But those rights are only rarely jeopardized by a joint trial.

Regarding the second category of prejudice, the Supreme Court in *Zafiro* "did not clearly explain what it meant by a jury being prevented from 'making a reliable judgment' " even with limiting instructions. *Blankenship,* 382 F.3d at 1123. The Court did, however, provide a few examples where a joint trial might have that

> effect. *Zafiro,* 506 U.S. at 539, . . . ; *see also Blankenship,* 382 F.3d at 1123–25 (noting that the examples in *Zafiro* "appear[ ] to be fairly comprehensive"). One example is where overwhelming evidence of guilt is introduced against a codefendant that would not have been admissible against the defendant in a separate trial, raising the specter of "spillover effect." *United States v. Cross,* 928 F.2d 1030, 1039 (11th Cir. 1991); *see also Zafiro,* 506 U.S. at 539, . . . ; *Blankenship,* 382 F.3d at 1123–24. But even then "a court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt." *United States v. Kennard,* 472 F.3d 851, 859 (11th Cir. 2006).

*United States v. Lopez*, 649 F.3d 1222, 1234-35 (11th Cir. 2011).

Here, Defendants do not suggest that admission of evidence regarding the earlier robberies and attempts and drugs will violate any of their specific constitutionally protected trial rights. Instead, they proceed under the second category of prejudice — that the evidence in question, if permitted to be admitted,[2] will prevent the jury from making a reliable judgment about guilt or innocence.

While the Court recognizes Defendants' concerns, the circumstances under which jury instructions cannot address any potential prejudicial effect of evidence admissible only against a codefendant are extremely limited. For example, in *Lopez*, the defendants sought a severance because two of their codefendants had murdered a fellow drug dealer, his wife, and their two young children. The autopsy reports and photographs of the dead, bullet-riddled victims and testimony about how they were killed were all admitted into evidence. Based on the admission of this evidence

---

[2]While the Court has previously discussed the admissibility of the evidence regarding the earlier robberies and attempts, *see* D.E. 510, the Court has not yet opined on the admissibility of the evidence regarding the drug trafficking. That issue is not squarely before the Court at this time, so the Court declines to rule on the admissibility of such evidence. Instead, only for purposes of determining the pending Motions, the Court assumes without deciding that such evidence will be admissible.

against the codefendants, the defendants argued that they had been unduly prejudiced.

The Eleventh Circuit disagreed. In reaching this conclusion, the court emphasized the importance of the jury instructions and the district court's repeated reminders to the jury to consider evidence against only those defendants that the evidence implicated and to assess the guilt or innocence of each defendant separately. *Lopez*, 649 F.3d at 1238-39. In addition, the court found that the government had introduced "compelling evidence" of the defendants' guilt. *Id.* at 1240-41.

Here, nature of the evidence against Codefendants Brown, Johnson, and Davis is far less prejudicial than that at issue in *Lopez*. Unlike in *Lopez*, where the evidence in question regarded the cold-blooded murders of four people — including a three-year-old and a four-year-old child, here, the evidence involves no deaths (although an armored security guard was shot during the 2005 robbery, but, fortunately, he recovered) and no violence against young children. Nor does the evidence at issue include graphic photographs of assassinated children. In short, the evidence that the Government seeks to admit in this case is far less inflammatory than that at issue in *Lopez*.

If the *Lopez* prejudice could be addressed by jury instructions, this Court is hard pressed to conclude that any prejudice stemming from admission of the prior robberies and drug trafficking, which pale in comparison to the admitted evidence in *Lopez*, could not. As for the evidence regarding Defendants Williams's and Simmons's guilt, the Court cannot fully evaluate that at this time, before trial has occurred. But nor is the Court without any idea of the Government's evidence. Because of the trial of Codefendant Madison, the Court has reviewed much of the evidence that it anticipates that the Government will present against Defendants Williams and Simmons. While the Court is not inclined to opine on the incriminating nature or lack thereof of the evidence, the Court nonetheless notes that the Government appears to have numerous sources of relevant evidence in this

case against these Defendants.  Under all of the circumstances, therefore, Defendants' Motions for Severance are denied.

### *III.  Conclusion*

For the foregoing reasons, Defendant Hasam Williams's Motion to Sever [D.E. 526] and Defendant Joseph Simmons's Motion to Sever [D.E. 547] are **DENIED**.

**DONE AND ORDERED** this 15th day of April 2012.

																																		  _____
																																		  ROBIN S. ROSENBAUM
																																		  UNITED STATES MAGISTRATE JUDGE

cc:	The Honorable Lurana S. Snow
	Counsel of Record