# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60285-ROSENBAUM/SNOW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

HASAM WILLIAMS,

        Defendant.
_____/

## ORDER

This matter is before the Court on Defendant Hasam Williams's Motion *in Limine* to Exclude Recorded Interview or, Alternatively, Portions of That Interview and for an *in Camera* Review of the Recording [D.E. 602]. The Court has carefully reviewed Defendant's Motion and all supporting and opposing filings and is otherwise duly advised in the premises. In addition, the Court has conducted a complete *in camera* viewing of the recording. For the reasons set forth below, the Court now grants in part and denies in part Defendant Williams's Motion.

### *I. Background*

Defendants Terrance Brown, Toriano Johnson, Daryl Davis, Hasam Williams, Joseph K. Simmons, and Bobby Ricky Madison, were indicted in a multiple-count Indictment. The Second Superseding Indictment charges all Defendants with conspiracy to commit Hobbs Act robbery between May 2010 and at least October 1, 2010 (Count 1). D.E. 262. More specifically, the Second Superseding Indictment alleges that Defendants conspired "to take U.S. currency and property from the presence and custody of employees of Brink's Incorporated . . . against such persons' will, by

means of actual and threatened force, violence, and fear of injury to such persons . . . ." *Id.* at 1-2.

Besides the conspiracy set forth in Count 1 of the Second Superseding Indictment, Count 2 charges Defendant Williams with attempted Hobbs Act robbery of Brink's security guards at a Bank of America located on Federal Highway in Lighthouse Point, Florida, on July 26, 2010. *See* D.E. 262. Relatedly, Count 3 alleges that Williams carried and used a firearm during and in relation to the attempted robbery charged in Count 2. *Id.*

Among the discovery that the Government provided to Williams in this case was a recording of an interview of Williams also on July 26, 2010, by Broward Sheriff's Office Deputy Robert J. Crum. Williams had been arrested earlier in the day after allegedly running with a gun, from a stolen car in Lighthouse Point. Therefore, Deputy Crum, who was a member of the Broward Sheriff's Office gun squad, interviewed Williams after Williams waived his *Miranda* rights.

During the interview, Crum asked Williams about his criminal history. Crum also questioned Williams about the events leading up to Williams's arrest. Williams stated that he had run into his friend "Jim," whose last name he did not know, while at the Swap Shop. According to Williams, Jim promised to give Williams, who claimed to have taken the bus to the Swap Shop, a ride home. Williams further stated that he and Jim drove around for a while and made two stops to visit with girls. When Officer Crum asked who the girls were, Williams said that he did not know and he was not interested in them because they were fat. Williams also indicated that he and Jim had stopped at McDonald's, although Williams could not say what Jim had ordered or eaten. Then Williams explained that he and Jim entered the Bank of America property to turn around, but when they were pulling out, Jim saw a police officer, and he then advised Williams for the first time that the car had been stolen. Subsequently, Williams said, he and Jim got out of the car and ran, but first, Williams

grabbed Jim's gun, which had been in the car.

During the course of the questioning, Crum became suspicious that Williams was not being truthful with him. Crum then told Williams that he thought that Williams had been lying to him from the beginning. As Crum explained it, he could not understand why Williams, a convicted felon, would have taken Jim's gun from the car. Williams insisted that he had been truthful, and questioning resumed for a short time.

Thereafter, Crum left the room. In the approximately half hour of recording that follows, Williams was in the room by himself. During that time, he picked his nose and wiped it on the table and walls of the room, as well as on himself. He also removed his arms from his shirt and placed his hands in his pants for extended periods of time. Finally, Williams spent approximately 52 seconds wiping and re-wiping his face with the inside of his black shirt. The recording shows that, as a result, a light-colored residue rubbed off on the black shirt.

Defendant Williams now seeks to exclude the recording in its entirety because "it includes prejudicial testimony and inadmissible hearsay," or, alternatively, to redact those parts of the interview that "are prejudicial and inadmissible hearsay." D.E. 602 at 1. More specifically, Williams asks the Court to exclude "all statements about 'fat girls,' statements about Mr. Williams' criminal history, statements about firearms that do not have to do with the firearm in question, all narratives and statements made by Officer Crum regarding the veracity of Mr. Williams' statement, and all portions of the tape when Mr. Williams is recorded in the room by himself." *Id.*

In response to Williams's Motion, the Government agrees to redact from the recording "all nose picking, masturbating, discussions about firearms other than the one impounded, . . . statements about 'fat girls[,]' . . . [and] any discussion about Williams' criminal history with the exception of

reference to a criminal conviction that acts to prohibit Williams from lawfully carrying a firearm."[1]
D.E. 612 at 2-3. But the Government argues that the remaining portions of the recording are admissible and relevant and should not be excluded. *See id*.

## *II. Discussion*

### A. The Court Will Not Exclude the Recording in its Entirety

Beginning with Williams's request to exclude the recording in its entirety, Williams contends that his Motion should be granted because the recorded interview "includes prejudicial testimony and inadmissible hearsay . . . ." D.E. 602 at 1. The Court construes these challenges as objections under Rule 403, Fed. R. Evid., and Rule 802, Fed. R. Evid.

As an initial matter, the Court reviews the definition of "relevant evidence." Rule 401, Fed. R. Evid., defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," which fact "is of consequence in determining the action." Here, Williams does not assert that the recording is not relevant, and the Court agrees that it is, in fact, relevant. The interview occurred as a result of Williams's arrest, which, in turn, happened because Williams, carrying a gun, fled a stolen car that an alleged codefendant had been driving, which had just been at the bank branch charged in Counts 2 and 3 of the Second Superseding Indictment, on the day of the alleged attempted robbery. Considering that Williams

---

[1] The Court understands the Government to agree to omit all discussion of Williams's criminal history except for that occurring from 49:50 -50:16. Similarly, the Court understands Williams's Motion not to seek to exclude the fact that he is a convicted felon — just the nature and extent of his prior convictions. If Williams does seek to exclude the fact that he is a convicted felon, the Court denies the Motion in that respect, as it is relevant to evaluating Williams's statements regarding his possession of the firearm on July 26, 2010. Nor is it hearsay, and its probative value is not substantially outweighed by its prejudicial effect, for the reasons set forth *infra*, at Section 2.B.2.

lived nowhere near Lighthouse Point, Williams's statements regarding the circumstances of his presence at the bank, with a gun, in a stolen car certainly pertain to the issue of whether Williams, in fact, attempted to rob a Brink's messenger outside the bank on July 26, 2010.

Because the evidence is relevant, the Court considers whether, as Williams suggests, it should be ruled inadmissible under Rule 403, Fed. R. Evid. Rule 403 provides,

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The Eleventh Circuit has described Rule 403 as "an extraordinary remedy which the district court should invoke sparingly," *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)), because it permits the exclusion of "concededly probative evidence." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) (quoting *United States v. Thevis*, 665 F.2d 616, 633 (5th Cir. Unit B 1982).[2] Exclusion under Rule 403 also runs counter to the general direction of the Federal Rules, which "favor admission of evidence over exclusion if the evidence has any probative value." *Id.* (citations omitted). Therefore, and because in a criminal trial relevant evidence is "inherently prejudicial[,] it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." *Id.* (citations omitted) (emphasis in original).

In conducting the Rule 403 analysis, a court must consider the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (citing *Tinoco*, 304 F.3d at

---

[2]Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

1120). Moreover, the more essential the evidence to proof of the Government's case, "the less likely that a trial court should order the evidence excluded." *King*, 713 F.2d at 631 (citing *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983). As the Eleventh Circuit has opined, "The major function of Rule 403 is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Id.* (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862 (1979)). Courts therefore strike the balance in favor of admissibility. *Id.* (citing *Tinoco*, 304 F.3d at 1120) (citing *Elkins*, 885 F.2d at 784)).

Here, the Court cannot say that the probative value of the recording as a whole is substantially outweighed by an unfair prejudicial effect. While it is true that the recording is prejudicial against Williams, that fact results in large part from Williams's own statements and actions. And, to the extent that discrete parts of the recording may be unfairly prejudicial, they may be excised without excluding the recording as a whole. Therefore, the Court does not exclude the entire recording under Rule 403.

Nor may the entire recording be excluded as impermissible hearsay. Defendant Williams's statements constitute a party-opponent's statements against interest when offered by the Government. As a result, they are not hearsay under Rule 801(d)(2), Fed. R. Evid. As for Deputy Crum's statements, for the most part, the Government does not seek to admit them for the truth of the matter asserted. Instead, the Government offers them to put into context Williams's statements in response. As a result, such statements of Deputy Crum do not constitute hearsay and are not inadmissible under Rule 801. *See, e.g., United States v. Makarenkov*, 401 F. App'x 442, 445 (11th Cir. 2010) (citing *United States v. Price*, 792 F.2d 994, 997 (11th Cir. 1986)) (where out-of-court statements of witness are offered only to render understandable the defendant's own statements, they

are not hearsay).

**B.  Discrete Portions of the Recording Will Be Excluded**

Having concluded that the recording as a whole is not excludable, the Court considers whether certain portions of the recording should, nonetheless, be redacted.  As an initial point, the Court notes that, as set forth above, the Government has already agreed to the redaction of specific aspects of the recording.  Therefore, the Court does not address the agreed-upon parts here but instead simply directs that they be redacted.  That leaves the issues of the face wiping and Crum's statements to Williams when Crum was questioning him.

*1. Face Wiping*

Williams argues that the Court should exclude his "actions, in wiping his face, after having allegedly run from the police, laying on the ground, being handcuffed in a police vehicle, and finally interrogated by Office[r] Crum for over an hour" because they are "completely irrelevant, highly prejudicial and should be excluded . . . under [Rule] 401 or 403."  D.E. 602 at 10.  In further explanation, Williams expresses concern for the jury, stating, "[T]here is simply no reason to bore the jury with images of Mr. Williams wiping his face during his interview.  There is no probative value to this evidence. . . ."  *Id.*  Finally, Williams suggests that he "could have been wiping his face for any of [a] number of reasons . . . ."  *Id*. at 10-11.

The Court disagrees that the images of Williams wiping his face are irrelevant.  As the Government explains, co-conspirator Nathanial Moss has previously testified and is expected to testify again that Defendant Williams had make-up on his face to help disguise his appearance during the alleged planned robbery.  The recorded images clearly show a light-colored residue on the inside of Williams's black shirt after he wiped his face.  While Williams contends that it could have been

mere sweat or dirt, it is up to the jury to evaluate the evidence for itself. So long as the jury could fairly conclude that Williams was removing make-up from his face, the evidence is relevant. In view of the color of the residue (light, versus a dark color of dirt or a dark appearance of wetness from sweat on material) and the fact that Williams appeared visibly cold during the entire interview, placing his arms and hands inside his shirt and pants, a jury could reasonably reach the conclusion that the Government argues. As a result, the evidence is not inadmissible under Rule 401 or Rule 403.

Finally, while the Court certainly appreciates Williams's consideration for the jury's time, the Court does not find that the jury will be unduly inconvenienced by sitting through an additional 52 seconds of the recording in order to see Williams wipe his face. Therefore, the Court respectfully declines to exclude the face wiping from the recording.

*2. Crum's Statements Regarding Williams's Truthfulness or Lack Thereof*

In particular, Williams complains about the following statements that Crum made during the course of Crum's questioning of Williams:

> You are not being honest with me, Man. [DVD at 36:47].
>
> You are telling me stuff but you are holding back a lot of stuff. [*Id.* at 37:00].
>
> If you are telling me part of the story and I am finding holes in your story, then that means now you are lying to me. [*Id.* at 37:49].
>
> I ain't going to try to bullshit you; don't try to bullshit me. [*Id.* at 38:05].
>
> Let's not play on each other here. [*Id.* at 38:19].
>
> Let's not play childish games and lie to one another. [*Id.* at 38:31].

> So let's be honest. So far you have not been honest with me. [*Id.* at 38:40].
>
> Why don't you tell me the truth — the whole truth — and not leave anything out because right now you are leaving things out like crazy. There are too many holes in your story, so you want to start over now and tell me the truth or do you want to keep on going this route? [*Id.* at 38:51].
>
> Crum outlines inconsistencies and holes in Williams's statement, concluding, "You are not telling me everything.*"* [*Id.* at 40:14].
>
> From this point on everything that happened — and I do mean everything — why don't you tell me that? [*Id.* at 40:46].
>
> So you are not going to tell me the truth. [*Id.* at 40:58].
>
> In response to Mr. Williams's statement that he did not intend to commit a robbery, Crum stated, "You had to think about that for a minute." [*Id.* at 41:15].
>
> And in response to Mr. Williams' statements that the gun belonged to the driver to the vehicle and not to him, Crum said, "If only your fingerprints are on there and his fingerprints are not on there, that means that he probably didn't touch the gun. . . ." [*Id.* at 45:49], and followed up with, "If his fingerprints are not on the gun and all the fingerprints on the gun are yours, it's going to be hard for the defense to say that's not your gun." [*Id.* at 46:07].

D.E. 602 at 2-3. Describing these remarks as hearsay and unduly prejudicial, Williams argues that the Court should exclude them.

In support of his position, Williams cites state-court cases that hold that an officer's statements opining on the credibility of a defendant during a recorded interview of the defendant constitute inadmissible hearsay. *See* D.E. 602 at 4-9 (citing, *e.g.*, *Sparkman v. State*, 902 So. 2d 253 (Fla. 4th DCA 2005); *Mohr v. State*, 927 So. 2d 1031, 1034 (Fla. 2d DCA 2006); *Pausch v. State*, 596 So. 2d 1216, 1218-19 (Fla. 2d DCA 1992)). Setting aside the fact that these cases are not

binding on this Court, *Sparkman* holds simply that the statements of the law-enforcement officer in question were not adoptive admissions by the defendant, and they did not meet any of the other exceptions to Florida's hearsay rule. Nowhere in this decision, however, did the court appear to have expressly considered or analyzed the possibility that the officer's statements might not constitute hearsay in the first place. And *Mohr* and *Pausch* do not exclude the statements as hearsay, but rather, rely exclusively on the court's analysis that the statements involved were more prejudicial that probative.

This Court disagrees with Williams that all of the statements in question constitute hearsay. An out-of-court statement is hearsay only if it is offered for the truth of the matter asserted. Here, at least some of the statements in question are offered by the Government to put into context and make understandable Williams's statements in response to the questioning. For example, in response to Crum's statement that Williams is not telling him everything, Williams says, "You didn't ask." This answer would have little meaning offered outside the context in which Crum's remark puts it, yet it is probative of the value of Williams's statement, and it informs the fact finder of the standard that Williams himself applied in providing his statement. As a result, Crum's questioning that puts Williams's statements into context and makes them understandable is admissible as long as it does not violate Rule 403, Fed. R. Evid. *See, e.g., United States v. Price*, 792 F.2d 994, 996-97 (11th Cir. 1986); *United States v. Byrom*, 910 F.2d 725, 737 (11th Cir. 1990); *cf. United States v. Augustin*, 661 F.3d 1105, 1128-29 (11th Cir. 2011).

On the other hand, Crum also engages in relatively lengthy, largely uninterrupted speeches about why Crum believes that Williams is being less than truthful and complete in his statement. Many of these statements do not appear to elicit responses from Williams. To the extent that Crum's

remarks are not necessary to put Williams's statements into context and make them understandable, they must be excised from the recording because they constitute hearsay, and no hearsay exception appears to apply to them. After reviewing the recording, the Court concludes that the sections of it from 37:11 through 38:58 and 39:16 through 39:55 must be redacted because they do not put into context or make more understandable Williams's statements thereafter.

As for the remaining portions of Crum's questioning of Williams, the Court engages in the Rule 403 analysis, balancing the probative value of the questioning against its prejudicial effect. Here, the Court concludes that the remaining questioning should not be excluded under Rule 403. First, as explained above, it is necessary to make Williams's statement understandable and thus give it probative value. Second, Williams's own statement is highly probative because he gave it immediately after being apprehended with a firearm in the vicinity of one of the alleged attempted armored-car robberies on the date of one of the alleged attempted armored-car robberies charged in the Second Superseding Indictment. Third, to the extent that Crum's statements opining on Williams's truthfulness and completeness are prejudicial, that prejudice can be addressed by an appropriate instruction to the jury. *See, e.g., Byrom*, 910 F.2d at 737. As the Eleventh Circuit has explained, jurors are expected to follow instructions. *United States v. Cancelliere*, 69 F.3d 1116, 1123 (11th Cir. 1995). Thus, when viewed "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact," *Dodds*, 347 F.3d at 897, as required when a court conducts a Rule 403 analysis, the remaining questioning should not be excluded.

Nor do the federal and state cases Williams cites that do not permit law-enforcement officers to opine on the truthfulness of a defendant *during trial* alter the analysis. *See* D.E. 602 at 6 (citing

*United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987). Significantly, the officers' opinions in those cases were excluded because the officers offered them on the stand, during the trial. At that time, the officers were not questioning the defendants, and their remarks could not have put into context the defendants' statements during earlier questioning. Instead, the officers' opinions were offered as substantive evidence during the trial. That is not the case here.

### *III. Conclusion*

For the foregoing reasons, Defendant Hasam Williams's Motion *in Limine* to Exclude Recorded Interview or, Alternatively, Portions of That Interview and for an *in Camera* Review of the Recording [D.E. 602] is **GRANTED IN PART and DENIED IN PART**, consistent with this Order.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 23rd day of April 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Lurana S. Snow

Counsel of Record